IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| CRAIG A. WILCZYNSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action   04-129 |
| | ) | |
| WALTER KUHNS and SCOTT EICHER, | ) | |
| | ) | |
| Defendants. | ) | |


<u>MEMORANDUM ORDER</u>

CONTI, District Judge

In this memorandum order, the court considers the motion for summary judgment (Doc.

No. 19) filed by defendants Walter Kuhns ("Kuhns") and Scott Eicher ("Eicher")(Kuhns and

Eicher referred to collectively as "defendants") with respect to all claims asserted by plaintiff

Craig A. Wilczynski ("Wilczynski" or "plaintiff") under the Family and Medical Leave Act, 29

U.S.C. § 2601 *et seq*. ("FMLA") and the Pennsylvania Human Relations Act, 43 PA. CONS.

STAT. ANN. § 951 *et seq*. ("PHRA") and the cross-motion for partial summary judgment (Doc.

No. 29) filed by plaintiff with respect to his claim against defendants for interference under the

FMLA.  After considering the joint statements of material facts, the motions and briefs submitted

by the parties with respect to each motion, the court will grant in part defendants' motion by

granting summary judgement in favor of defendants with respect to plaintiff's claim for

interference under the FMLA and will deny plaintiff's motion for summary judgment on that

claim.  Summary judgment will also be granted in part in favor of defendants with respect to

plaintiff's claim for disability discrimination under the PHRA.  In all other respects, defendant's motion for summary judgment will be denied.

### *Factual Background*

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Three Rivers Marine, LLC ("Three Rivers"), Metal Processing of America, LLC ("MPA") and Hiller Barge, LLC ("Hiller") were all subsidiaries of Wilhelm and Krouse ("Wilhelm").  Joint Statement of Material Facts to Defendants' Motion for Summary Judgment ("J.S.") ¶ 1.  Three Rivers, MPA, and Hiller occupied the premises commonly known as 1800 Paul Thomas Boulevard, Brownsville, Pennsylvania.  Id. ¶ 2.  Three Rivers was the predecessor to MPA and Hiller.  Id. ¶ 3.  During the relevant time frame, MPA produced structured steel, while Hiller manufactured and repaired barges.  Id. ¶ 3.  Due to a bankruptcy petition filed by Wilhelm, MPA and Hiller filed for bankruptcy protection.  Id. ¶ 4.  In April 2002, Kuhns, Eicher, and Gabe Centofanti ("Centofanti") purchased the assets of Hiller from National City Bank and formed the entity HBC Barge, LLC ("HBC").  Id. ¶ 4.

In 1998, plaintiff began his employment with Three Rivers.  Id. ¶ 5.  Plaintiff later became an employee of MPA.  Id. ¶ 5.  Plaintiff's last day on the job was January 28, 2002.  Id. ¶ 5.  Plaintiff's work included cutting steel plates and tack welding, which required plaintiff to wear safety equipment such as a hard hat, gloves, and ear plugs.  Id. ¶ 7.  Plaintiff was provided a copy of the MPA Associate Handbook ("handbook") and "looked it over."  Id. ¶ 6.   The

handbook addresses the need, if possible, for an employee to provide thirty days' notice of any FMLA leave.  Id. ¶ 6.

In February 2000, Kuhns began as a vice president with Wilhelm.  Id. ¶ 8.  Kuhns later became a vice president for MPA and Hiller.  Id. ¶ 8.  Eicher was employed as a supervisor for MPA and Hiller.  Id. ¶ 9.  Michelle Eitner ("Eitner") was employed by MPA, then Hiller, in the area of human resources.  Id. ¶ 10.

In January 2002, Eicher was a supervisor for MPA and reported to Kuhns.  While Eicher conducted interviews and had input regarding the discharge of employees, decisions on employment decisions were ultimately made by Kuhns or Centofanti.  Id. ¶ 11.  Eicher admitted in the defendants' answers to paragraphs 20 and 21 of plaintiff's amended complaint that he was involved in the decision to terminate plaintiff and that he was "acting directly or indirectly in the interests of plaintiff's employer," although he now asserts that he did not participate in the decision to discharge Wilczynski.   Pl. Amended Complaint (Doc. No. 12) ¶¶ 20, 21; Def. Answer (Doc. No. 13) ¶¶ 20, 21;  J.S. ¶ 12.

As Hiller was considered a shipyard, and its employees worked on a waterway, Hiller was subject to federal regulations regarding drug testing as promulgated by the United States Department of Transportation and the United States Coast Guard.  J.S. ¶ 13.  Pursuant to the federal regulations, Hiller employees were subject to pre-employment drug testing and random testing while employed.  Id. ¶ 14.  The employees of MPA were not subject to as rigorous a drug testing program as the employees who worked on barges.  Id. ¶ 15.

Plaintiff was treated for drug and alcohol problems in the early 1990's.  Id. ¶ 16.  After completing a drug treatment program at Cover Forge in Altoona, Pennsylvania, plaintiff

remained drug free until October 1998. Id. ¶ 16. In October 1998 plaintiff began using marijuana and then cocaine. Id. ¶ 16. He informed his physician, Dr. Riad Saradar ("Dr. Saradar"), of his drug problem in 1999. Id. ¶ 16. Dr. Saradar advised plaintiff on several occasions to attend drug rehabilitation. Id. ¶ 17. Throughout their relationship, Dr. Saradar advised plaintiff of the dangers of drug use and told plaintiff he would refer him to either an inpatient or outpatient treatment facility at plaintiff's request. Id. ¶ 18. Despite Dr. Saradar's advice, plaintiff continued to use marijuana and cocaine on a regular basis throughout the summer of 2002. Id. ¶ 19. Plaintiff admitted that he did not pass a single urinalysis drug test during the summer of 2002. Id. ¶ 19.

Plaintiff's drug use negatively affected his work. Id. ¶ 20. At times, plaintiff missed work and was issued a disciplinary warning on January 28, 2002, for arriving to work late. Id. ¶ 20. Plaintiff, in reviewing the employee manual, knew that drug use was not permitted in the workplace. Id. ¶ 21. On January 29, 2002, plaintiff requested a referral from Dr. Saradar for outpatient drug rehabilitation. Id. ¶ 22.

The parties dispute when plaintiff disclosed his drug problem to his employer. Defendants claim that plaintiff did not disclose his drug use until January 28, 2002. Id. ¶ 23. Plaintiff denies that claim and argues that Eicher knew about his use of cocaine and marijuana prior to that date. Id.

On January 28, 2002, plaintiff disclosed his drug problem to his employer because he received a pink slip for arriving to work late. Id. ¶ 24. On January 28, 2002, plaintiff made an appointment with Dr. Saradar for January 29, 2002. Id. ¶ 25. Plaintiff was granted time off to attend an appointment with Dr. Saradar on January 29, 2002, and plaintiff requested a referral to

a drug treatment program during the appointment.  Id. ¶ 26.  Plaintiff was also given additional

time off to be evaluated by the Mon Valley Drug and Alcohol Program ("Mon Valley").  Id. ¶ 27.

After the evaluation by Mon Valley, plaintiff asked permission to work the midnight shift so that

he could attend outpatient drug treatment classes during the afternoon.  Id. ¶ 28.  Plaintiff's

request was denied.  Id. ¶ 29.  After requesting leave, Kuhns said to plaintiff, "[b]ecause of you

mother fuckers I had to piss in a cup in front of a woman."  February 23, 2005 Deposition of

Wilczynski (Doc. No. 24) at 244.

Plaintiff was informed that he could return to work after he passed a drug test.  Id. ¶ 30.

The parties dispute whether plaintiff was told that he had to complete a drug rehabilitation

program prior to returning to work.  Id.  Eicher and Eitner believed that plaintiff was going to

take time off to seek drug treatment.  Id. at 31.

The parties dispute whether plaintiff asked for time off to seek drug treatment.

Defendants claim that after plaintiff was told he could not work the midnight shift while

attending drug treatment classes, plaintiff never requested a leave of absence to attend drug

treatment and never indicated when he would return to work.  Id. ¶ 32.  Plaintiff claims that he

did ask for time off work to seek drug treatment.  Id.  Plaintiff claims that Eitner and Eicher told

him to take as much time as he needed for treatment.  Id.  Plaintiff testified that he asked to

return to work only upon being informed by his health care provider that he could do so.  Id.

Plaintiff continued to use drugs during the summer of 2002 and admitted that he would

have been unable to pass a drug test in order to return to work at the time he requested to work

the midnight shift.  Id. ¶ 33.  On May 8, 2002 plaintiff failed a drug test administered by the

Fayette County Drug and Alcohol Commission ("Fayette Commission").  Id. ¶ 34.  The parties

dispute whether plaintiff failed another drug test on August 23, 2002.  Id.

Plaintiff never completed a drug treatment program during his time as an employee of MPA. Id. ¶ 35. The parties dispute whether plaintiff quit the program at Mon Valley. Id. ¶ 36. Defendants argue that he did, while plaintiff claims he was forced to leave the program when he was discharged. Id.

Plaintiff's initial interview with the Fayette Clinic was on April 5, 2002. Id. ¶ 37. Plaintiff admitted to his counselor, Dorothy Spickler ("Spickler"), during his initial interview that he was attending the Fayette Clinic at the suggestion of an attorney. Id. ¶ 38. The parties dispute the reason for plaintiff's involuntary termination from the Fayette Clinic on September 24, 2002. Id. ¶ 39. Defendants claim plaintiff was terminated because of sporadic attendance. Id. Plaintiff claims that he was terminated because he told Spickler he was no longer going to attend counseling sessions. Id. Plaintiff testified that Spickler told him that he would be involuntarily discharged even though he decided to leave on his own. Id. Spickler testified that plaintiff's prognosis for recovery was poor because he did not complete the program. Id. ¶ 40.

Plaintiff applied for unemployment compensation during the first week of February 2002. Id. ¶ 43. Plaintiff's application resulted in the Pennsylvania Bureau of Unemployment Benefits and Allowances ("Unemployment Bureau") sending a notice to plaintiff's employer stating that plaintiff quit his job due to health reasons. Id. ¶ 44. Defendants received the notice in early February 2002 and concluded that plaintiff had quit his job. Id. ¶¶ 45, 47-48. Kuhns believed that plaintiff was attempting to commit fraud by collecting unemployment compensation while maintaining his benefits as an employee of MPA or Hiller. Id. ¶ 46. Plaintiff was aware that the Unemployment Bureau informed his employer that he voluntarily quit his job and was told the same by his employer. Id. ¶¶ 49-50.

The parties dispute the facts surrounding the termination of plaintiff's employment. <u>Id.</u> ¶ 41. Defendant claims plaintiff was not terminated because he requested time to attend a drug rehabilitation program. <u>Id.</u> ¶ 41. Plaintiff disputes that assertion and argues that he requested time off work to seek substance abuse treatment. <u>Id.</u> Defendants argue that plaintiff was terminated because he applied for unemployment compensation. <u>Id.</u> ¶ 42. Plaintiff disputes this fact, but admits that Eicher, Eitner, and Kuhns all testified that plaintiff was terminated by reason of his applying for unemployment benefits. <u>Id.</u>

### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 247-48. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. <u>Id.</u> at 249. The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. <u>Horta v. Sullivan</u>, 4 F.3d 2, 8 (1st Cir. 1993) (citing WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); <u>Pollack v. City of Newark</u>, 147 F.Supp. 35, 39 (D.N.J. 1956), <u>aff'd</u>, 248 F.2d 543 (3d Cir. 1957), <u>cert.denied</u>, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is

entitled to consider exhibits and other papers that have been identified by affidavit or *otherwise made admissible in evidence*") (emphasis added).

### *Analysis*

**I.      Summary judgment will be granted in favor of defendants with respect to plaintiff's claim for interference under the FMLA because plaintiff failed to give adequate notice and for that reason plaintiff's motion for partial summary judgment with respect to that claim shall be denied.**

_____The FMLA was enacted by Congress in 1993, in part to address problems arising from "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods."  29 U.S.C. § 2601(b)(1).  The act was designed to provide a balance between "entitl[ing] employees to take reasonable leave for medical reasons" and "accommodat[ing] the legitimate interests of employers."  29 U.S.C. §§ 2601(b)(1-2); see Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. § 2601(b)(1)) (holding that "the primary [purposes] of the FMLA are to 'balance the demands of the workplace with the needs of families'.").  The FMLA grants eligible employees the right to take up to twelve work weeks of leave during a twelve-month period for any of the following reasons:

> (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
> (B) Because of the placement of a son or daughter with the employee for adoption or foster care.
> (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1)(A-D).  At the end of the leave period, the employee has the right to be restored to her former position or an equivalent position.  29 U.S.C. § 2614(a)(1).

An eligible employee[1] under 29 U.S.C. § 2612(a)(1)(C) or (D) may be entitled to take

FMLA leave intermittently

> on a reduced schedule when medically necessary.  The taking of leave
> intermittently or on a reduced leave schedule . . . shall not result in a reduction in
> the total amount of leave to which the employee is entitled . . . beyond the amount
> of leave actually taken.

29 U.S.C. § 2612(b).  The phrase "intermittent leave" is defined under the implementing

regulations as "leave taken in separate periods of time due to a single illness or injury, rather than

for one continuous period of time, and may include leave of periods from an hour or more to

several weeks." 29 C.F.R. § 825.800.

Under the FMLA, "it shall be unlawful for any employer to interfere with, restrain, or

deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29

U.S.C. § 2615(a)(1).  In order for plaintiff to assert a legitimate claim for an interference of

FMLA rights, "the employee only needs to show that he was entitled to benefits under the FMLA

and that he was denied them." Callison, 430 F.3d at 119.

"Courts have refused to recognize a valid claim for interference in the absence of any

injury." Alfiano v. Merck & Co.,175 F.Supp.2d 792, 794 (E.D.Pa. 2001)(citing Voorhees v.

Time Warner Cable Nat'l Div., 1999 U.S. Dist. LEXIS 13227 (E.D.Pa. 1999); Fry v. First

Fidelity Bancorp., 1996 U.S. Dist. LEXIS 875 (E.D.Pa. 1996)).  The scope of what constitutes

interference is described in the applicable regulations as follows: "Interfering with the exercise of

an employee's rights would include, for example, not only refusing to authorize FMLA leave, *but*

*discouraging an employee from using such leave.*"  29 C.F.R. § 825.220(b) (emphasis added).

---

[1]The act defines an "eligible employee" as one who has been employed for at least twelve months by the employer and for at least 1,250 hours during the previous twelve-month period. 29 U.S.C. § 2611(A).  Both parties agree that plaintiff is an eligible employee under the FMLA. See J.S. ¶ 2.

To state a claim for interference under the FMLA, a plaintiff must show that: (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he was entitled under the FMLA. Lombardo v. Air Products and Chemicals, Inc., No. 06-1120, 2006 U.S. Dist. LEXIS 46077 at *11 (E.D. Pa. July 7, 2006)(citing Weisman v. Buckingham Twp., No. 04-4719, 2005 U.S. Dist. LEXIS 11696 at *11 (E.D. Pa. June 14, 2005).

Defendants concede that plaintiff has shown the first three elements for an FMLA interference claim:  (1) plaintiff was an eligible employee under the FMLA, 2) defendant was an employer subject to the FMLA requirements, and 3) plaintiff was entitled to FMLA leave. Defendants argue, however, that plaintiff cannot show the fourth element noted above by reason of plaintiff not giving thirty days' notice to defendant of his intention to take FMLA leave. Defendants do not contest that plaintiff's drug addiction was a serious health condition.

Pursuant to FMLA regulations, an employee must give an employer notice that he needs to take FMLA leave.  29 C.F.R. § 825.302; Wilson v. Lemington Home for the Aged, 159 F.Supp.2d 186, 191 (W.D. Pa. 2001)(Ambrose, J.).  If the leave is foreseeable, the employee must provide thirty days' notice.  Id.  If thirty days' notice is not possible, then notice must be given "as soon as practicable."  Id.  An employee need not specifically mention the FMLA or assert rights under it to satisfy the notice requirement.  29 C.F.R. § 825.302(c); Wilson, 159 F.Supp.2d at 192.  The employee need only state that leave is needed.  Id.

Defendants argue that plaintiff's leave was foreseeable and he failed to notify his employer thirty days prior to requesting leave.  Plaintiff responds by arguing that his leave was not foreseeable, but was made "as soon as practicable" in compliance with 29 C.F.R. § 302(a).

The issue of foreseeable leave and sufficient notice under the FMLA has not been addressed by the United States Court of Appeals for the Third Circuit.  Courts in other circuits, however, have considered the issue.  In <u>Gilliam v. United Parcel Service, Inc.</u>, 233 F.3d 969 (7th Cir. 2000), the plaintiff Reginald Gilliam ("Gilliam") sued his former employer United Parcel Service, Inc. ("UPS") for a violation of the FMLA.  The district court granted summary judgment in favor of UPS on plaintiff's claim and plaintiff appealed.  <u>Id.</u>

Gilliam took a day off work on Friday, August 22, 1997, with the permission of his supervisor.  <u>Id.</u> at 970.  Although his supervisor expected Gilliam to return to work on the following Monday, Gilliam believed that his leave was of an indefinite nature and did not contact his supervisor until Thursday, August 28, 1997.  <u>Id.</u>  When Gilliam did get in touch with his supervisor on Friday, August 29, 1997, he was informed that he was deemed to have abandoned his job.  <u>Id.</u>  Gilliam took time off work to be with his fiancé, who gave birth to Gilliam's child on August 20, 1997.  <u>Id.</u>  Gilliam had known about the pregnancy since November of 1996, but did not inform UPS of his desire to take leave until after his fiancé gave birth.  <u>Id.</u>  On August 21, 1997, Gilliam asked his supervisor for leave and, despite a collective bargaining agreement that required ten days' notice for leave, waived the notice requirement and granted Gilliam leave.  <u>Id.</u> There was a factual dispute between the parties as to how many work days plaintiff intended to take off work.  <u>Id.</u> Gilliam believed that he was entitled to 120 days of leave under the FMLA. <u>Id.</u>

After discussing the FMLA regulations that require either thirty days' notice or notice "as soon as practicable," the court determined that plaintiff's situation fitted the terms of foreseeable leave "to a T."  <u>Id.</u> at 971.  The court noted that plaintiff was aware of the expected birth of his child for nine months, yet chose to notify his employer of his request for leave the day after his

11

child was born.  Id.  Because the plaintiff knew of his fiancé's pregnancy for nine months and

chose to notify his employer of his request for leave the day after his child's birth, the court

found that the plaintiff did not satisfy the FMLA's notice requirements and affirmed the grant of

summary judgment in favor of the defendant by the district court.  Id. at 972.

The court also addressed the issue of waiver of notice requirements.  Gilliam argued that

because UPS granted him leave for a few days on Friday, August 22, 1997, UPS waived any right

to argue that the notice requirements were not met.  Id. at 971.  The court rejected that argument.

> But it does not follow that all family leave *must* be under the FMLA unless
> the employer negates the possibility of imposing a 30-day delay.  Perhaps
> Gilliam's leave was under the collective bargaining agreement; perhaps it
> was simply a humane step by a caring supervisor willing to bend the rules.
> Employees would not gain in the long run by converting all humanitarian
> leaves and discretionary acts into leaves governed by the structure of the
> FMLA, for then employers would have powerful reasons to say no when
> requests like Gilliam's are made in the future.

Id.

The issues of foreseeable leave and notice were also considered by the United States

Court of Appeals for the Sixth Circuit in Moorer v. Baptist Memorial Health Care, 398 F.3d 469

(6th Cir. 2005).  In Moorer, the plaintiff William Moorer ("Moorer") brought suit against his

former employer, Baptist Memorial Health Care ("Baptist Memorial") for violations of the

FMLA and the Americans with Disabilities Act ("ADA").  Id. at 472.  The district court entered

summary judgment in favor of Baptist Memorial on plaintiff's FMLA claim and the district

court, following a bench trial, entered judgment in favor of the plaintiff on the claim under the

ADA.  Id.  Both parties appealed the judgments to the United States Court of Appeals for the

Sixth Circuit.  Id.

⎯⎯⎯⎯⎯Moorer was employed by Baptist Memorial for seventeen years prior to his termination in 1997.  Id. at 473.  In a meeting on August 19, 1997, Moorer was confronted by two of his supervisors with allegations of alcoholism while on the job.  Id. at 475.  They "made a management referral to CONCERN, EAP, for fitness assessment and any resulting plan of action."  Id.  Moorer was advised the action was mandatory and if he did not participate and cooperate by the following day, he would be immediately terminated.  Id.  Moorer was assured that he would have a job waiting for him upon his return from alcohol rehabilitation.  Id.  Moorer had an evaluation the next day, was diagnosed with "chemical abuse" and was recommended to undergo inpatient treatment at a recovery center.  Id.  He stayed at the facility for five weeks of treatment.  Id.  Moorer's supervisors decided to terminate him during the pendency of his leave.  Id. at 476.

The court of appeals reversed the summary judgment granted by the district court in favor of the defendant with respect to Moorer's FLMA claim.  The court of appeals recognized that because Moorer's  leave was for a serious medical condition, he must make a "reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer . . . ."  Id. at 487 (quoting 29 U.S.C. § 2612(e)(2)(A)).  The court of appeals, however, found that Baptist Memorial "fully anticipated and approved Moorer's lengthy treatment. . . ."  Id.  The court focused on the fact that Baptist Memorial not only anticipated that Moorer would need to be on leave for an extended period of time prior to confronting him regarding his alcoholism, but that Baptist Memorial told plaintiff that he would be terminated if he did not enter rehabilitation and that a job would be waiting for him when he returned from treatment.  Id.  The court of appeals found that Moorer satisfied the "as soon as practicable" requirement and that Baptist Memorial

could not complain about the lack of notice of plaintiff's leave when they fully anticipated that the leave would be necessary.  Id.

Similar issues were considered by a district court in Hauge v. Equistar Chem. Co., No. 02 C 0878, 2002 WL 1968390 (N.D. Ill. Aug. 26, 2002).  In Hauge, the plaintiff Thomas Hauge ("Hauge") sued his former employer Equistar Chemical Company ("Equistar") for discrimination under the FMLA.  Id. at *1.  Hauge was an Equistar maintenance technician and was responsible for electrical instrument inspection and repair work.  Id.  Following two reprimands for inattention to job responsibilities and the imposition of a performance action plan due to poor work, Hauge was placed on "decision-making leave" by Equistar.  Id.  Decision-making leave allowed the employer and employee to reconsider the employment relationship.  Id.  Equistar continued Hauge's employment after the decision-making leave concluded.  Id.

In January 2000, Hauge was diagnosed with a fractured coccnyx due to a sledding accident.  Id.  He was not absent from work due to the injury.  Id.  Hauge received medical treatment on several occasions.  Id.  On August 28, 2002, Hauge called his insurance company and sought a surgeon.  Id.  The next day, he made an appointment with Dr. Rezin.  Id.  Hauge reported to work the next day, informed his supervisor that he was in pain, and asked for permission to see Dr. Rezin.  Id.  Despite two requests, Hauge was not permitted leave until all emergency work was completed.  Id.  Hauge was responsible for emergency work that day.  Id.  Hauge was subsequently approved for leave later that day "if his operations team agreed with his temporary absence."  Id.  Hauge visited Dr. Rezin who evaluated Hauge, but did not treat him for pain.  Id.  Hauge returned to work later that day, but was reprimanded for not completing all emergency work orders prior to leaving.  Id.  Equistar, after an investigation, concluded that

14

Hauge failed to obtain proper leave.  Id.  On September 6, 2002, Equistar terminated Hauge's employment.  Id.

The court granted summary judgment in favor of the defendant.  Id. at *3.  The court found that Hauge did not inform Equistar of the severity of his problem or identify his pain as an emergency medical condition.  Id. at *3.  The court found that notification of unforeseeable leave "'ordinarily . . . mean[s] at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee.'"  Id. (quoting 29 C.F.R. § 825.302(b))(emphasis added).  The court noted that Hauge notified Equistar on the morning of his scheduled appointment and, although Hauge complained about pain, he only met with Dr. Rezin for evaluation of a potential surgery and did not meet with his treating physician or go to the emergency room.  Id.  Finally, the court held that plaintiff's return to work two hours later and his presence at work the following two days indicated that plaintiff was not suffering from a serious medical emergency.  Id. at *4.

Finally, the court in Kaylor v. Fannin Reg'l Hosp., Inc., 946 F.Supp. 988 (N.D. Ga. 1996), also addressed the issues of FMLA notice and foreseeable leave.  In Kaylor, the plaintiff Scott Kaylor ("Kaylor") sued his former employer, Fannin Regional Hospital, Inc. ("Fannin"), for violations of the FMLA.  Id. at 988-89.  After a bench trial, the district court held, among other things, that plaintiff was not entitled to unforeseeable FMLA leave because of a stomach virus.  Id. at 989.

Kaylor was employed as a C.T. technician at Fannin from March of 1989 until his termination on February 8, 1995.  Id. at 991.  On December 24, 1994, Kaylor experienced a flare up of a previous back injury.  Id. at 992.  Kaylor was admitted to the hospital for back pain and numbness.  Id.  Plaintiff's wife called Kaylor's supervisor on that same day to alert her to

plaintiff's anticipated absence from work.  Id.  Kaylor was subsequently approved for medical

leave by Fannin on December 30, 1994.  Id. at 993.  Kaylor utilized approximately 120 days of

eligible FMLA leave during his hospitalization and convalescence.  Id.  Kaylor returned to work

on January 18, 1995.  Id.  Kaylor had a scheduled follow-up appointment with his doctor

scheduled for February 3, 1995.  Id.  Kaylor did not mention this appointment to his supervisors

for two weeks after he returned to work and finally notified them on January 30, 1995.  Id.

Kaylor's supervisor informed him that he could not have February 3, 1995 off because the

hospital would be short staffed on that day.  Id.  Kaylor never attempted to reschedule his

appointment.  Id.  Despite telling his supervisor that he would be at work on February 3, 1995,

Kaylor informed co-workers that he planned on calling off sick that day.  Id. at 994.  Plaintiff

asserted that he was stricken by a stomach virus on the night of February 2, 1995.  Id.  Plaintiff

called into Fannin and informed the emergency room staff that he was ill and would not report to

work.  Id.  Despite the illness, plaintiff was able to appear at his scheduled doctor's appointment.

Id.  Plaintiff's doctor testified that his appointment was not out of medical necessity but was a

routine exam.  Id.  On February 8, 1995, plaintiff was terminated for lying and abuse of sick time.

Id. at 995.  The court in Kaylor held that plaintiff had several months knowledge of the

appointment and his failure to notify Fannin of the appointment did not satisfy the notice

requirements of the FMLA.

The court finds in this case that plaintiff did not satisfy the notice requirements under the

FMLA and will grant defendants' motion for summary judgment with respect to plaintiff's claim

for interference under the FMLA.  Like the plaintiff in Gilliam, plaintiff was well aware of his

potential need to request leave.  He was instructed by his treating physician on multiple occasions

to seek treatment for his drug problem.  The evidence of record indicates that plaintiff was

16

instructed by Dr. Saradar to seek treatment more than a year prior to his request for leave on January 28, 2002.  Further, plaintiff gave less than one day's notice to his employer that he was seeking leave.

The facts of this case are different from Moorer in several respects.  First, in Moorer, plaintiff was instructed to go to alcohol counseling under threat of termination.  In addition, the defendant in Moorer anticipated and was prepared for Moorer's leave and was aware that he may be on leave for several months.  In this case, defendants did not instruct or even suggest to plaintiff to seek leave.  While there is a factual dispute with respect to whether defendants were aware of plaintiff's substance abuse addiction, there is no evidence of record to support a finding that defendants anticipated or expected plaintiff to request leave on January 28, 2002.  In addition, the plaintiff in Moorer on the day after he was instructed to be evaluated was diagnosed with "chemical abuse" and inpatient treatment for several weeks was recommended.  Two days after the evaluation, Moorer entered an inpatient treatment facility.  In this case, plaintiff knew over a year prior to his request for leave that he had a serious medical condition and had been recommended for treatment.

Plaintiff testified that on January 29, 2002, he was feeling ill and went to see Dr. Saradar for his symptoms.  Like the plaintiffs in Hauge and Kaylor, however, there is no evidence of record that he was treated for any medical pain or discomfort.  Plaintiff did not visit an emergency room nor did he receive medical treatment from Dr. Saradar.  Plaintiff, in fact, returned to work the next day with a note from his doctor.  Plaintiff also, upon learning that he was deemed to have quit his job, called defendants and informed them that he was willing and able to work.  Plaintiff's appointment with Dr. Saradar was more akin to a regular doctor's visit like that in Kaylor – one that could be rescheduled at a later date.

17

It is noted that plaintiff in the Joint Statement of Material Facts (Doc. No. 38) filed in connection with Plaintiff's Motion for Partial Summary Judgment did not submit evidence that he provided thirty days' notice.  Plaintiff in his motion for partial summary judgment argues only that thirty days' notice was not necessary, which is the same argument plaintiff made in response to defendants' motion for summary judgment with respect to this claim.  Plaintiff asserts that if defendants had been given thirty days' notice, plaintiff would not have been permitted to work until after he completed a drug and alcohol rehabilitation program and passed a drug test.  If that had occurred, plaintiff would have been in a situation similar to the plaintiff in <u>Moorer</u>, where the employer knew the treatment would be for an extended period and directed the <u>immediate</u> need for the leave.  Here it is undisputed that plaintiff was well aware of the need for treatment for several years and failed to provide thirty days' notice of the appointment with Dr. Saradar or the need for treatment.  Given the evidence of record concerning the length of time, over several years, that plaintiff was aware of his serious medical condition and the need for treatment, the court concludes that a reasonable jury could not find the leave was unforeseeable and thus could not render a verdict for the plaintiff.

The court, therefore, finds that there are no material facts in dispute with regard to plaintiff's failure to satisfy the notice requirements under the FMLA and will grant defendants' motion for summary judgment with respect to plaintiff's claim for interference with his rights under the FMLA.  By reason of plaintiff's failure to satisfy the notice requirement under the FMLA, plaintiff cannot prove his claim for interference and plaintiff's motion for partial summary judgment must be denied.

**II.     Defendants' motion for summary judgment cannot be granted with respect to plaintiff's claim for retaliation under the FMLA.**

Defendants also move for summary judgment with respect to plaintiff's claim for retaliation under the FMLA.  Plaintiff's claim for retaliation under the FMLA is subject to the burden- shifting analysis adopted by the United States Supreme Court in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973); <u>Wilson v. Lemmington Home for the Aged</u>, 159 F.Supp.2d 186, 194 (W.D. Pa. 2001)(applying Title VII framework to FMLA retaliation claims).  In <u>McDonnell Douglas</u>, the Supreme Court developed the burden-shifting framework for courts to utilize as a tool in analyzing retaliation claims.  The <u>McDonnell Douglas</u> framework requires a plaintiff alleging a violation of the FMLA to first establish a *prima facie* case of discrimination. The *prima facie* case, the elements of which depend upon the type of claim the plaintiff is alleging, "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection."  <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 & n.6 (1981).  In so doing, the *prima facie* case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  <u>Id</u>. at 254.

If the plaintiff successfully demonstrates a *prima facie* case of discrimination, the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision.  <u>Simpson v. Kay Jewelers</u>, 142 F.3d 639, 644 n.5 (3d Cir. 1998).  The burden on the defendant at this junction is "relatively light," and the defendant can satisfy this burden "by introducing evidence which, *taken as true*, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision."  <u>Fuentes v. Perskie</u>, 32 F.2d 759, 763 (3d Cir. 1994) (emphasis added).

Once the defendant offers a legitimate nondiscriminatory reason for the challenged conduct at issue, "the McDonnell Douglas framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [i]s discrimination *vel non*."  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  The plaintiff, thus, has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).

### A.  Prima Facie Case

To establish a *prima facie* case for retaliation under the FMLA, a plaintiff must show that (1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave.  Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135, 146 (2004).  For the purposes of this motion, defendants do not dispute the first two elements of the *prima facie* case.  The court must consider the element of causation as it relates to plaintiff's termination and his use of FMLA leave.

The United States Court of Appeals for the Third Circuit articulated two main factors that are relevant with respect to establishing a causal link to satisfy a *prima facie* case of retaliation: (1) timing or (2) evidence of ongoing antagonism.  Abramson v. Wm. Patterson College of N.J., 260 F.3d 265, 288 (3d Cir. 2001) ("Temporal proximity . . . is sufficient to establish the causal link. [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period.").  As this court stated in Sabbrese v. Lowe's Home Centers, Inc., 320 F.Supp.2d 311 (W.D. Pa. 2004):

The United States Court of Appeals for the Third Circuit is somewhat ambivalent with respect to whether timing alone is sufficient to satisfy the causation prong of the prima facie case. See Woodson v. Scott Paper Co., 109 F.3d 913, 920-921 (3d Cir. 1997) ("Temporal proximity is sufficient to establish the causal link."); Jalil v. Avdel Corp., 873 F.2d 701 (3d Cir. 1989) (causal link established where plaintiff discharged two days following employer's receipt of the plaintiff's EEOC claim); but c.f. Quiroga v. Hasbro, Inc., 934 F.3d 497 (3d Cir. 1991) (following bench trial, court determined "as a matter of fact" the timing of the plaintiff's discharge alone did not raise an inference of retaliation); Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (causation prong not established on timing alone where 19 months passed following protected activity and adverse employment action: "Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."). Timing, however, in conjunction with other types of suggestive evidence, is clearly sufficient to demonstrate the causal link. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000). For example, timing combined with evidence of inconsistent reasons given by an employer for an employee's termination was held to satisfy the causation prong of the prima facie case. Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986). See also Abramson, 260 F.3d at 289 ("Here, as we found in our discussion of the discrimination claim, [plaintiff] has succeeded in both casting doubt on the reasons [her employer] proffered for her termination, and in demonstrating that those reasons were vague and inconsistent."); see also EEOC v. L.B. Foster Co., 123 F.3d 746, 753-54 (3d Cir.1997), cert. denied, 522 U.S. 1147 (1998).

Id. at 323.

In this case, plaintiff requested FMLA leave on January 28, 2002, and requested to be transferred to the midnight shift on January 31, 2002. He was terminated by defendants on February 7, 2002, a mere ten days after this initial request for leave. The court finds that such a short period may, by itself, establish plaintiff's *prima facie* case. See Sabbrese, 320 F.Supp. at 322; Wilson, 159 F.Supp.2d at 195 (holding that the twelve-day temporal proximity between defendant's termination letter deeming plaintiff to have quit because she failed to provide a medical certification requested by defendant's FMLA policy–a reason that violated the FMLA–and the exercise of plaintiff's rights under the FMLA established a causal connection). In addition, plaintiff adduced evidence that he made telephone calls to both Eicher and Kuhns, but none were returned during the time between his leave request and termination. Finally,

Kuhns' comment to plaintiff that "[b]ecause of you mother fuckers I had to piss in a cup in front of a woman" after plaintiff took leave for substance abuse also establishes evidence of antagonism. The court finds, therefore, that drawing all inferences in favor of plaintiff, the non-moving party, the plaintiff adduced enough evidence to allow a jury to conclude reasonably that plaintiff established a *prima facie* case of retaliation under the FMLA.

### B. Shifting Burden of Production

Under step two of the <u>McDonnell Douglas</u> framework, where the plaintiff establishes a *prima facie* case of discrimination, a presumption arises that the employer unlawfully discriminated against the employee, shifting the burden of production to the defendant to "articulate some legitimate nondiscriminatory reason for the employee's rejection." <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>see</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502 (1993). "[A]lthough the <u>McDonnell Douglas</u> presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" <u>Hicks</u>, 509 U.S. at 507 (citing <u>McDonnell Douglas</u>, 450 U.S. at 253).

A defendant is not required to meet this burden by a preponderance of the evidence, but rather "the employee's prima facie case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 257 (1981). If the burden of production is met by the defendant, the ultimate burden of persuasion shifts back to the plaintiff to prove "that the

alleged reasons proffered by the defendant were pretextual and that the defendant intentionally discriminated against the plaintiff." Jalil, 873 F.2d at 706 (citing Burdine, 450 U.S. at 252-53).

At the summary judgment stage, the shifting burden requires the plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more than likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To survive summary judgment, the plaintiff must submit evidence that  allows the fact finder "reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Id. (citations omitted). The non-moving plaintiff is required to "demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer that 'the employer did not act for [the asserted] non-discriminatory reasons.'" Id. (citations omitted). The necessary evidence may consist of the evidence submitted by the plaintiff in the *prima facie* case, as well as additional evidence rejecting the employer's legitimate non-discriminatory reason as pretextual. Id. at 764.

Defendants stated legitimate non-discriminatory reason for plaintiff's termination was due to the notice from the Unemployment Bureau that he had quit his job due to health reasons. Defendants also argue that they terminated plaintiff because they were concerned that he was attempting to commit fraud by collecting unemployment compensation and maintaining his benefits with Hiller. There is no dispute that defendants' stated reason is sufficient to shift the burden of production to plaintiff.

The court finds that plaintiff adduced enough evidence of pretext to meet his burden. First, the court points to the inconsistencies in defendants' conduct. Defendants were aware that plaintiff had requested and was on FMLA leave for treatment of a drug addiction. Yet when they received a notice from the Unemployment Bureau, they immediately proceeded to regard plaintiff as an employee that quit his job. Despite repeated calls to Eicher and Kuhns by plaintiff, his calls were never returned. In addition, it is a matter of record that plaintiff notified Eitner that he wanted to continue to work at Hiller and did not wish to quit. Despite that conversation, Eitner proceeded with terminating plaintiff's employee benefits.

In addition, the court notes that Eitner informed the Pennsylvania Department of Labor and Industry that plaintiff was terminated for willful misconduct because he refused to take a drug test. Yet Eitner admitted that she has no knowledge of plaintiff refusing to take a drug test. That fact alone, showing inconsistencies in defendants' reasons for terminating plaintiff, is enough to satisfy plaintiff's burden.

The court finds, therefore, that plaintiff has adduced enough evidence of pretext to allow a jury to decide his claim for retaliation under the FMLA.[2]

---

[2]As claims under the PHRA for retaliation are analyzed under the same framework as claims for retaliation under Title VII and the FMLA, defendants' motion for summary judgment with respect to plaintiff's claim for retaliation under the PHRA is denied for the same reasons. Woodson v. Scott Paper Co., 109 F.3d 913, 919 (3d Cir. 1997)(applying Title VII analysis to a PHRA retaliation claim).

### III.    Defendants' motion for summary judgment with respect to plaintiff's claims against Eicher cannot be granted.

Defendants move for summary judgment with respect to all claims asserted by plaintiff against Eicher because he did not participate in the decision to terminate plaintiff.  The FMLA defines an employer as "any person who acts, directly or indirectly, in the interest of any employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(a)(ii)(I).

Plaintiff points to defendants' answers to plaintiff's amended complaint in which it was admitted that Eicher was involved in plaintiff's termination.  While defendants produced Eicher's deposition for proof that Eicher was not involved, at the summary judgment stage the evidence must be viewed in the light most favorable to the non-moving party.  In Missouri Housing Development Comm'n v. Brice, 919 F.2d 1306 (8th Cir. 1990), the court of appeals found that admission in pleadings such as an answer are binding unless withdrawn or amended. The court held that even if contradictory evidence is produced, admissions contained in pleadings are still binding.  "[T]he question presented is whether admissions contained in pleadings are binding, where, as here, the admitting party later produced evidence contrary to those admissions. We hold that [a defendant's] admissions in his answer are binding." Id. at 1314; see Keller v. United States, 58 F.3d 1194, 1198-99 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. . . .  A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party."); see also Giannone v. U.S. Steel Corp., 238 F.2d 544, 547 (3d Cir. 1956).  By reason of defendants' unequivocal admissions which have not been withdrawn, the court cannot grant defendants' motion for summary judgment with respect to plaintiff's claims against Eicher.

25

**IV.    Defendants' motion for summary judgment with respect to plaintiff's**
**alleged exhaustion of remedies under the PHRA will be denied.**

Defendants also move for summary judgment with respect to plaintiff's claims under the

PHRA.  Defendants argue that plaintiff failed to exhaust his administrative remedies because he

failed to file an administrative complaint against Kuhns or Eicher with the Pennsylvania Human

Relations Commission or the Equal Employment Opportunity Commission.

Defendants' argument is without merit.  While it is true that a plaintiff is required to

name in the caption all parties alleged to have committed discrimination in a charge, the United

States Court of Appeals for the Third Circuit has recognized an exception to that requirement.

42 U.S.C. § 2000e-5(f)(1); 43 PA. CONS. STAT. ANN. § 959; Shafer v. Bd. of Educ., 903 F.3d

243, 252 (3d Cir. 1990).  That exception permits suits against persons not named in the caption,

but named in the body of the charge.  McInerney v. Moyer Lumber and Hardware, Inc., 244

F.Supp.3d 393, 398-99 (E.D. Pa. 2002)(holding that the plaintiff exhausted administrative

remedies under the PHRA by naming individual defendants in the body of the charge because

individual defendants are put on notice that their conduct is under review). It is undisputed that

Eicher and Kuhns are named in the body of plaintiff's charge.  Defendants' motion for summary

judgment for failure to exhaust administrative remedies with respect to plaintiff's claims under

the PHRA is denied.


**V.    Defendants' motion for summary judgment with respect to plaintiff's claim**
**for disability discrimination under the PHRA will be granted**.

Defendants also move for summary judgment with respect to plaintiff's claim for

disability discrimination under the PHRA.  Plaintiff did not respond to this argument in his

response to defendants' motion and the court's review of the amended complaint finds that it is unclear whether plaintiff actually pled a claim for disability discrimination under the PHRA.

To establish a *prima facie* case for discrimination under the PHRA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified to perform the essential functions of the job without or without reasonable accommodations by his employer; and (3) he suffered an adverse employment action. Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999). The PHRA defines a disability as a physical or mental impairment that substantially limits one or more major life activities. 43 PA. CONST. STAT. ANN. § 954(p). Plaintiff adduced no evidence of a substantial limitation of any major life activity. In fact, plaintiff simply did not address defendants' argument on this point. The court, therefore, to the extent plaintiff pled a claim for disability discrimination under the PHRA, will grant defendants' motion for summary judgment with respect to that claim.

### Conclusion

After reviewing the undisputed material facts of record and any disputed facts of record taken in the light most favorable to the non-moving party, the court determines that defendants' motion for summary judgment shall be granted with respect to plaintiff's claims for interference with his rights under the FMLA and for disability discrimination under the PHRA and shall be denied in all other respects and plaintiff's cross-motion for partial summary judgment with respect to his claim for interference under the FMLA shall be denied.

### *Order*

**AND NOW**, this 14th day of September 2006, upon consideration of the parties'

arguments and supporting documents

**IT IS ORDERED** that defendants' motion for summary judgment (Doc. No. 19) is

**GRANTED IN PART AND DENIED IN PART** and plaintiff's motion for partial summary

judgment (Doc. No. 29) is **DENIED.**

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:      Counsel of record